L. CASTOR, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 25, 1896.

1. **Railroads:** KILLING OF STOCK: DILIGENCE REQUIRED WITHIN DEPOT GROUNDS. When stock comes upon railway tracks, and is run over and killed by a locomotive, within the depot grounds of the railway company, and not at a public crossing, the mere fact that the servants of the company in charge of the locomotive could by the exercise of ordinary care have discovered the stock in time to have avoided injury thereto will not render the company liable for the loss. Such liability will result only, if such servants failed to exercise ordinary care to prevent the accident after they discovered the danger to which the stock was exposed.

2. ———: ———: INSUFFICIENCY OF EVIDENCE. The evidence is considered and is held insufficient to establish the requisite negligence.

*Appeal from the Webster Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED.

*Wallace Pratt* and *J. C. Cravens* for appellant.

(1) No evidence was competent under the pleadings, because it was not averred that the cows were killed in Finley township. *Jewett v. Railroad,* 38 Mo. App. 48; 2 R. S., sec. 6126. (2) The instructions given were erroneous, because it appears from the undisputed evidence that the cows did not come upon the track at any public crossing, and, therefore, the ques-

tion is not whether the engineer could have seen them, but whether he did see them, in time to stop the train before striking them. *Senate v. Railroad*, 41 Mo. App. 295; *Jewett v. Railroad*, 38 Mo. App. 48; *Brooks v. Railroad*, 27 Mo. App. 573; *Hoffman v. Railroad*, 24 Mo. App. 546. (3) The court erred likewise in refusing the second instruction asked by defendant. There was no evidence of negligence in the operation of the train, either as to speed or in failing to stop before the cows were struck. The former could only have been proved by an ordinance of the town (if any), and the latter by showing that the cows were actually discovered by the engineer in time to stop before striking them. *Powell v. Railroad*, 76 Mo. 80; *Young v. Railroad*, 79 Mo. 336; *Jewett v. Railroad, supra.*

No brief filed for respondent.

BIGGS, J.—This action originated before a justice of the peace. The amended statement charged that two cows, belonging to plaintiff, were struck and killed by a locomotive on the defendant's road at or near the town of Seymour. The killing was alleged to have occurred by reason of the negligence of the defendant's servants in operating the train, and also that the defendant had negligently put salt on the track at the place where the injury occurred, which caused the cows to come upon the track, and further that the defendant had failed to fence that portion of the road, although it might have done so. On appeal the defendant asked the circuit court to require the plaintiff to elect upon which alleged cause of action he would proceed to trial. This the court refused to do. This matter we need not discuss, as the plaintiff's instructions submitted the case on the theory only that the defendant's servants were guilty of negligence in running the train. The instructions are as follows:

"1.   The court instructs the jury that, if they believe from the evidence that the defendant was running and operating a line of railroad through the town of Seymour, in Finley township, in Webster county, Missouri, on the tenth day of January, 1892, and that plaintiff was the owner of the two cows described in the petition, and that said cows got upon the track of defendant's railroad, and, while said cows were on said track, they were struck and killed by the engine and cars of defendant, and that, at the time 'they were so struck and killed by the engine and cars of defendant, the engineer in charge of the train that struck them *might by the use of ordinary care have seen said cows* in time to have stopped the train and avoid striking said cows, you will find the issues for the plaintiff and assess his damages at such sum as you shall believe from the evidence to be the value of said cows at the time they were killed, not to exceed $65.

"2.   The court instructs the jury that the term 'ordinary care,' as used in instruction number 1, means such care as ordinarily prudent men would use under like circumstances.

"3.   The court instructs the jury that, if they believe from the evidence that from the character and nature of the railroad track the defendant's engineer in charge of said engine *could have seen said cows on the track of said railroad a sufficient distance and length of time to have enabled said engineer and other employees of said railroad in charge of and operating said train to have stopped or checked said train after seeing said cows*, and thereby to have avoided killing or injuring the same, and that they failed to do so, then and in that case, the defendant is liable for the killing of said stock, and you will find for the plaintiff."   (The italics are ours.)

The court refused an instruction asked by the defendant which was in the nature of a demurrer to the

evidence. The defendant excepted to the giving of the plaintiff's instructions and the refusal of the one asked by it, and it still excepts. There was a judgment for the plaintiff for $65, and the defendant has appealed.

The following facts are undisputed: The cows were killed within the switch limits of the defendant's station at the town of Seymour, and the place was not at or near the crossing of a public highway. The railroad extends east and west through the town, and the west end of the switch is distant from the depot about six hundred yards. About midway between the depot and the west end of the switch the railroad is crossed by a public highway. The cattle were killed about thirty or forty feet east of the west end of the switch, or about nine hundred feet west of the crossing of the public road. Only two witnesses saw the accident. Joseph Craig, who testified for the plaintiff, said that, when he first saw the cows, they were walking west along the railroad track a short distance from where they were killed, and that the front of the train was about half way between where the cattle were killed and the public crossing. He also testified that the track was straight and unobstructed for a long distance east of the place where the cows were killed. The engineer who was in charge of the locomotive testified that the train was a through freight, and did not stop at the station; that, when he passed the station, the train was running about twelve miles an hour, and that, after he had crossed the highway and when the locomotive was about two hundred and fifty feet from where the cows were killed, they came suddenly upon the track from behind some ties which were stacked near the side track; and that the moment he saw them he sounded the whistle, reversed the engine and applied the brakes. He also testified that it would have been impossible, considering the speed and weight of the

train, to stop it within a less distance than eight or nine hundred feet.

That the plaintiff's instructions are wrong, there can be no question. The case clearly belongs to that class, which requires of railroad companies the use of all reasonable means to prevent injury *after the perilous position of the animal is discovered;* whereas the instructions made the defendant liable if the engineer might, by ordinary care, have seen the cows in time to have avoided the injury. *Wallace v. Railroad,* 74 Mo. 594; *Young v. Railroad,* 79 Mo. 336; *Brooks v. Railroad,* 27 Mo. App. 573; *Hoffman v. Railroad,* 24 Mo. App. 546; *Senate v. Railroad,* 41 Mo. App. 295; *Jewett v. Railroad,* 38 Mo. App. 48; *Sloop v. Railroad,* 22 Mo. App. 593. The evidence leaves no doubt that the cattle came upon the track at the depot grounds and not at a public crossing, and hence not at a place where the persons in charge of the train had any reason to anticipate the presence of live stock. Under such circumstances the rule of the foregoing cases is that a railroad company can only be held upon proof, that its servants failed to exercise ordinary care in preventing the accident *after* the discovery of the danger to which the animal was exposed.

We are also of the opinion that the court committed error in refusing the instruction asked by the defendant. There is no possible theory of the evidence upon which the defendant can be held. When Craig first saw the cows, the locomotive, according to his testimony, was not exceeding four hundred and fifty feet from them. He did not see them come upon the road. The engineer testified that they came suddenly upon the track about two hundred and fifty feet in front of the locomotive; that previous to that they were behind the ties, and that the moment they stepped onto the track he sounded the whistle, applied the brakes and

reversed the engine. He also testified that it would have been impossible to stop the train in less than eight hundred feet. This last statement is not contradicted, and, we apprehend, could not have been by witnesses who had any knowledge of the subject. It is, therefore, obvious that the plaintiff failed to make out his case, and, as there is no probability that the evidence would be different on another trial, we will not remand the cause.

The judgment will be reversed. All the judges concur.